# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 17-0100** (Webster County 16-F-8)

**Allen R. Garner Jr.,**
**Defendant Below, Petitioner**

**FILED**

**April 9, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Allen R. Garner Jr., by counsel Timothy V. Gentilozzi, appeals the Circuit Court of Webster County's January 3, 2017, order denying his post-trial motions for judgment of acquittal and a new trial and sentencing him following his convictions for operating or attempting to operate a clandestine drug laboratory and conspiracy. Respondent State of West Virginia, by counsel Mary M. Downey, filed a response. On appeal, petitioner contends that there was insufficient evidence to sustain his convictions, that the circuit court erred in admitting evidence of a "scuffle" between him and an officer at the scene, that the State improperly introduced a statement made by him without disclosing the statement, and that the circuit court erred in denying his motion to sever.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On January 12, 2016, petitioner was indicted on one count of operating or attempting to operate a clandestine drug laboratory and one count of conspiracy. The indictment also charged Virginia Lee Davis, Billy W. Green, and Rodney R. Carpenter with these same crimes.[1] Mr. Green, who is Ms. Davis's son, entered into a plea agreement with the State prior to trial. Also prior to trial, petitioner moved to sever his trial from his codefendants' trial. Finding that petitioner failed to demonstrate any prejudice by a unitary trial, the circuit court denied this motion. The charges against petitioner, Ms. Davis, and Mr. Carpenter proceeded to a jury trial on September 14, 2016.

The evidence at trial showed that, on August 6, 2015, Deputies Vandevender and Cogar of the Webster County Sheriff's Department were dispatched to Ms. Davis's home following a

---

[1]We previously upheld Mr. Carpenter's convictions and sentence in *State v. Carpenter*, No. 17-0117, 2018 WL 317790 (W.Va. Jan. 8, 2018)(memorandum decision).

report that Mr. Carpenter was there causing a disturbance. As Deputy Vandevender was walking to Ms. Davis's front door, he noted a strong chemical odor consistent with the operation of a methamphetamine laboratory, specifically, that of Coleman fuel, and he saw a bottle being thrown "off the back porch, and [it] flew across and hit the outbuilding [beside the house]." Deputy Vandevender observed liquid coming out of the bottle, and, once he got closer to it, noticed a white, granular substance in it. At this point, additional law enforcement was called to the scene, including Trooper Baier and Trooper Hebb of the West Virginia State Police. Trooper Baier obtained consent from Ms. Davis to search her property.

During the search of Ms. Davis's home and property, the officers obtained and photographed additional evidence. The photographs, which were shown to the jury, depicted a partially-burned Zephrin-D pack; lithium battery pack; a bottle cut in half with a still-wet filter in it; a bag with liquid in it; tin foil, salt, and coffee filters on the kitchen countertop; pieces of ripped tin foil in a kitchen drawer; Liquid Fire; a metal "snort straw," which had been concealed over a doorway; a sweatshirt found in Mr. Green's room with a coffee filter in the front pocket; a gun rack from Mr. Green's room containing drug paraphernalia; a container from Ms. Davis's room containing lithium batteries; tubing from Ms. Davis's bedroom; Coleman fuel; and a filter commonly used in smoking devices. Deputy Vandevender testified that the items depicted in the photographs were commonly used for manufacturing, smoking, or snorting methamphetamine.

Deputy Vandevender also testified that two individuals seen at the scene were not arrested "[b]ecause we saw them walking through the yard towards [Ms. Davis's] residence and it was their statement and the statement of all the [d]efendants that they had just arrived there. They hadn't been there any time." Petitioner's counsel objected on the ground that this testimony suggested that petitioner gave a statement. The circuit court overruled this objection. During petitioner's counsel's cross-examination of Deputy Vandevender, counsel returned to the issue of these two individuals:

> Q: Well, what is your testimony of why you let them go?
>
> A: That we saw them walking to the house. They advised that they'd just got there. All the [d]efendants, at some point, said that they had nothing to do there, they had just arrived.
>
> [Petitioner's counsel]: Judge, I'm going to object again.
>
> THE COURT: Objection's overruled. You asked the question.

Petitioner's counsel continued:

> Q: As far as my client, he never told you anything about [these two individuals], correct?
>
> A: Yes, he did. There was no official statement taken from him, but he told us –

2

[Petitioner's counsel]: Objection. I'm going to object to the –

THE COURT: The objection's overruled. You[r] exceptions are noted.

Trooper Baier testified regarding his involvement in the investigation. Upon arriving to the scene, Deputy Vandevender informed him of the steps taken so far in the investigation and that "he had some type of a physical altercation with one of the – Bam, Allen Garner." Petitioner's counsel objected, but the circuit court overruled the objection and Trooper Baier continued with his testimony concerning the investigation at Ms. Davis's home.

Rebecca Harrison, a forensic analyst in the drug identification section of the West Virginia State Police Forensic Laboratory, testified that the evidence obtained, based upon its condition, suggested that the methamphetamine-making process was "toward the end." Trooper E.E. Bostic, who is certified in sampling and testing methamphetamine labs, also testified that the condition of the evidence obtained suggested that the methamphetamine-making process was nearly complete.

Mr. Green testified at trial for the defense. Mr. Green claimed responsibility for the methamphetamine operation and attempted to exonerate his codefendants. Mr. Green testified that he was operating the methamphetamine laboratory outside, behind the house, alone when petitioner and another codefendant arrived at Ms. Davis's house. Mr. Green testified that petitioner was not near him while he was making methamphetamine.

At the conclusion of the two-day trial, the jury found petitioner and his codefendants guilty of operating or attempting to operate a clandestine drug laboratory and conspiracy. On September 27, 2016, petitioner moved for judgment of acquittal arguing that there was insufficient evidence to convict him. On this same date, petitioner also moved for a new trial on the grounds that evidence of his altercation with an officer at the scene was improperly admitted, the State violated discovery rules in failing to provide his statement to defense counsel, and his trial should have been severed from his codefendants' trials.

On November 7, 2016, the parties appeared for a hearing on post-trial motions and sentencing. Upon finding that sufficient evidence was presented to convict petitioner, the circuit court denied petitioner's motion for judgment of acquittal. The circuit court also denied petitioner's motion for a new trial, finding that his motion to sever was properly denied, he had not shown unfair prejudice regarding evidence of the altercation, that the altercation was part of the res gestae of the crimes and not a prior bad act, and that his statement regarding the two individuals was not inculpatory or part of a custodial interrogation. The circuit court proceeded to sentence petitioner to not less than two nor more than ten years of incarceration for his operating or attempting to operate a clandestine drug laboratory conviction and not less than one nor more than five years of incarceration for his conspiracy conviction, which were ordered to run concurrently. These rulings were memorialized in an order entered on January 3, 2017. It is from this order that petitioner appeals.

Petitioner advances four arguments on appeal. First, petitioner argues that there was insufficient evidence to convict him beyond a reasonable doubt. Petitioner argues that the

"evidence presented was purely circumstantial" and did nothing more than prove he was present at the scene. With specific respect to his conspiracy conviction, he concedes that the State presented physical evidence that a crime had been committed, but failed to present evidence that he agreed to aid the codefendants. Concerning his operating or attempting to operate a clandestine drug laboratory conviction, petitioner highlights the absence of proof that he purchased any precursors for the manufacturing of methamphetamine, the absence of any drugs or drug paraphernalia found on his person, and the absence of any evidence directly tying him to the crimes.

This assignment of error implicates the circuit court's ruling on petitioner's motion for judgment of acquittal, to which this Court applies a de novo standard of review:

> The trial court's disposition of a motion for judgment of acquittal is subject to our *de novo* review; therefore, this Court, like the trial court, must scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt.

*State v. LaRock*, 196 W.Va. 294, 304, 470 S.E.2d 613, 623 (1996). Regarding a claim that the evidence at trial was insufficient to convict, this Court has stated that

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). Further,

> [a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

*Id.* at 663, 461 S.E.2d at 169, Syl. Pt. 3, in part.

Viewing the evidence in the light most favorable to the State, we find that there was sufficient evidence from which the jury could find petitioner guilty of operating or attempting to

operate a clandestine drug laboratory and conspiracy. We begin by noting that petitioner does not dispute that a methamphetamine laboratory was in operation on Ms. Davis's property while he was there. Indeed, Mr. Green admitted to operating the methamphetamine laboratory at the home. Petitioner is also correct in arguing that

> [m]erely witnessing a crime, without intervention, does not make a party to its commission unless his interference was a duty, and his non-interference was one of the conditions of the commission of the crime; or unless his non-interference was designed by him and operated as an encouragement to or protection of the perpetrator.

Syl. Pt. 9, *State v. Fortner*, 182 W.Va. 345, 387 S.E.2d 812 (1989) (internal quotations and citations omitted). But,

> [p]roof that the defendant was present at the time and place the crime was committed is a factor to be considered by the jury in determining guilt, along with other circumstances, such as the defendant's association with or relation to the perpetrator and his conduct before and after the commission of the crime.

*Id.* at 349, 387 S.E.2d at 816, Syl. Pt. 10. More particularly,

> [w]here a defendant is convicted of a particular substantive offense, the test of the sufficiency of the evidence to support the conviction necessarily involves consideration of the traditional distinctions between parties to offenses. Thus, a person may be convicted of a crime so long as the evidence demonstrates that he acted as an accessory before the fact, as a principle in the second degree, or as a principal in the first degree in the commission of such offense.

*Id.* at 349, 387 S.E.2d at 816, Syl. Pt. 8. "A person who is the absolute perpetrator of a crime is a principal in the first degree, and a person who is present, aiding and abetting the fact to be done, is a principal in the second degree." *Id.*, Syl. Pt. 5. To be convicted as a principle in the second degree, "the law requires that the accused 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed.'" *Id.* at 356, 387 S.E.2d at 823 (citation omitted). While the State must show that petitioner "shared the criminal intent of the principal in the first degree[, . . . ] the accused is not required to have intended the particular crime committed by the perpetrator, but only to have knowingly intended to assist, encourage, or facilitate the design of the criminal actor." *Id.* (internal quotations and citations omitted). Further, "[u]nder the concerted action principle, a defendant who is present at the scene of a crime and, by acting with another, contributes to the criminal act, is criminally liable for such offense as if he were the sole perpetrator." *Id.* at 349, 387 S.E.2d at 816, Syl. Pt. 11.

Bearing these principles in mind and crediting all inferences and credibility determinations that the jury might have drawn in favor of the prosecution, sufficient evidence exists to sustain petitioner's convictions. A reasonable juror could have concluded that the methamphetamine laboratory was being operated inside the house rather than outside, as Mr.

Green testified. Items typically used in operating a methamphetamine laboratory were found on the kitchen countertop, and petitioner was also inside the house at the time law enforcement arrived. Deputy Vandevender testified to smelling Coleman fuel, used in the manufacturing process, as he approached the front porch. Moreover, testimony was adduced that the manufacturing process was nearing completion at the time law enforcement arrived. The partially burned Zephrin-D packaging and battery packages, methamphetamine laboratory components hidden under the house, concealed snort straw, and other items strewn about could have led a reasonable juror to infer that multiple people, including petitioner, were hurriedly attempting to conceal their operation. Finally, credibility determinations are for a jury, and the jury in this instance found Mr. Green's attempts to exonerate his codefendants incredible. *See Guthrie*, 194 W.Va. at 663, 461 S.E.2d at 169, Syl. Pt. 3, in part.

Similarly, we find sufficient evidence to support petitioner's conspiracy to operate or attempt to operate a clandestine drug laboratory conviction. To prove a conspiracy, the State "must show that the defendant agreed with others to commit an offense against the State and that some overt act was taken by a member of the conspiracy to effect the object of that conspiracy." Syl. Pt. 4, in part, *State v. Less*, 170 W.Va. 259, 294 S.E.2d 62 (1981). Again, there is no dispute that a methamphetamine laboratory was in operation in petitioner's presence. Thus, petitioner's challenge focuses on the State's alleged failure to show that he agreed to aid his codefendants.

> The agreement to commit an offense is the essential element of the crime of conspiracy – it is the conduct prohibited by the statute. The agreement may be inferred from the words and actions of the conspirators, or other circumstantial evidence, and the State is not required to show the formalities of an agreement.

*Id.* at 265, 294 S.E.2d at 67 (citation omitted). Based upon the evidence presented as outlined above, reasonable jurors could conclude that petitioner was among a group of individuals who intended to encourage the preparation of the methamphetamine to share in it upon its completion. As such, the circuit court did not abuse its discretion in denying petitioner's motion for judgment of acquittal.

Petitioner's three remaining assignments of error concern the circuit court's denial of his motion for a new trial. Petitioner contends that a new trial is warranted because the evidence of his "scuffle" with Deputy Vandevender was more prejudicial than probative: "[i]t served only to make the petitioner appear in a bad light to the jury, and did nothing to strengthen the State's case against him on its own." Petitioner also argues that the State violated the West Virginia Rules of Evidence by allowing Deputy Vandevender to testify regarding petitioner's statement concerning the two witnesses at the scene who were not arrested without providing this statement to defense counsel. Finally, petitioner claims the circuit court erred in denying his motion to sever the cases.

We have previously held that

> [i]n reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of

reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).

It is also well-established that a petitioner's brief "must contain an argument exhibiting clearly the points of fact *and law* presented, the standard of review applicable, and *citing the authorities relied on*, under headings that correspond with the assignments of error." W.Va. R. App. P. 10(c)(7) (emphasis added). In an Administrative Order entered on December 10, 2012, then-Chief Justice Menis E. Ketchum specifically stated that "[b]riefs that lack citation of authority, fail to structure an argument applying applicable law, fail to raise any meaningful argument that there is error, or present only a skeletal argument" and "[b]riefs with arguments that do not contain a citation to legal authority to support the argument" are not in compliance with the Rules of Appellate Procedure.

Petitioner cites no authority to support his assertion that Trooper Baier's testimony regarding petitioner's altercation with Deputy Vandevender was more prejudicial than probative or that the introduction of the evidence justifies the new trial that he seeks. Likewise, petitioner cites no law to support his argument that the circuit court erred in denying his motion to sever or that the circuit court's denial justifies a new trial. Because these assignments of error fail to comply with the Rules of Appellate Procedure, we decline to consider them on appeal.

Petitioner's final argument is that the State violated the Rules of Evidence by failing to provide evidence of his statement concerning the two individuals about whom Deputy Vandevender testified. Petitioner asserts that neither he nor defense counsel were "aware of the statement before trial, and the petitioner denies ever making the statement." Petitioner asserts that Deputy Vandevender's testimony, therefore, violated Rule 33 of the West Virginia Rules of Criminal Procedure, and the circuit court erred in overruling counsel's objection to the testimony.

Rule 33 of the West Virginia Rules of Criminal Procedure provides that

[t]he court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice. If trial was by the court without a jury the court on motion of a defendant for a new trial may vacate the judgement if entered, take additional testimony, and direct the entry of a new judgment. A motion for a new trial based on the ground of newly discovered evidence may be made only after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within ten days after verdict or finding of guilty or within such further time as the court may fix during the ten-day period.

On its face, this Rule provides no support for petitioner's argument. Petitioner has also failed to apply this Rule to his argument; accordingly, he has failed to establish error in the admission of

this testimony. *See* Syl. Pt. 12, in part, *State v. Surber*, 228 W.Va. 621, 723 S.E.2d 851 (2012) ("An appellant must carry the burden of showing error in the judgment of which he complains.").

For the foregoing reasons, the circuit court's January 3, 2017, order denying his post-trial motions and sentencing him is hereby affirmed.

Affirmed.

**ISSUED**: April 9, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker